UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GALENSKI FARM, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|       v. | ) | Case No. 3:20-cv-30016-MGM |
| | ) | |
| NUTRIEN AG SOLUTIONS, INC. f/k/a | ) | |
| CROP PRODUCTION SERVICES, INC., | ) | |
|     Defendant. | ) | |

MEMORANDUM AND ORDER CONCERNING DEFENDANT NUTRIEN AG
SOLUTIONS, INC.'S MOTION TO COMPEL DISCOVERY
(Dkt. No. 53)

I.    <u>Introduction</u>

Plaintiff Galenski Farm (Galenski or Plaintiff) is a relatively small farming operation that

grows crops, including pumpkins, cucumbers, squash, and peppers for sale locally (Compl, ¶ 3).

Defendant Nutrien Ag Solutions, Inc. (Nutrien or Defendant) sells and applies fertilizers,

herbicides, insecticides, and fungicides to agricultural crops (Compl. ¶¶ 4-7).  Plaintiff alleges

that, on two occasions in July 2018, agricultural chemicals from Nutrien applied to some ninety-

two of its acres under cultivation damaged the crops thereon and rendered them largely

unsaleable (Compl. ¶¶ 10-13).  While there are disputes between the parties as to the cause and

extent of the damage to Galenski's crops, a principal disagreement between the parties is the

measure of damages and their calculation.  Before the court is Defendant's motion to compel

discovery.  For the reasons set forth below, Defendant's motion is granted in part and denied in

part.

II.    <u>Analysis</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise

limited by court order, the scope of discovery is as follows:  Parties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …. Information within this scope of discovery need not be admissible in evidence to be discoverable." The proportionality provision was added to Fed. R. Civ. P. 26(b)(1) in December 2015 to emphasize that there are intended to be limits on the breadth of discovery to which a party is entitled. *See, e.g., Fed. Energy Regulatory Comm'n v. Silkman*, 1:16-cv-00205-JAW, 2017 WL 6597510, at *6-7 (D. Me. Dec. 26, 2017). Nonetheless, "[a]s a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cherkaoui v. City of Quincy*, Civil Action No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015) (quoting *E.E.O.C. v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996)). "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015) (quoting *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, MDL No. 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013)). The party seeking information in discovery has the burden of showing its relevance. *See, e.g., Cont'l W. Ins. Co. v. Opechee Constr. Corp.*, Civil No. 15-cv-006-JD, 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016) (citing *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005)); *see also Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995); *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984). Conversely, "[w]hen a party resists the production of evidence, it 'bears the burden of establishing lack of relevancy or undue burden.'" *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (quoting *Sánchez-Medina v. UNICCO*

*Serv. Co.*, 265 F.R.D. 24, 27 (D.P.R. 2009)); *see also Cont'l W. Ins. Co.*, 2016 WL 1642626, at *1. The court addresses Nutrien's motion to compel in light of these general principles.

     A. Nutrien's document production requests

          1. Nutrien's document production request 19

Nutrien's document request 19 asked for production of all documents "related to the title, chain of title, ownership, rental, lease or other authority to use/cultivate the property which contains the fields relevant to this lawsuit" (Dkt. No. 54 at 9). Nutrien seeks all documents responsive to this request, which is narrowly drawn, in aid of calculating damages or understanding Plaintiff's damages calculation. According to Nutrien, a Galenski family member testified at deposition that he had certain lease agreements from 2018 stored in his office that had not been produced (Dkt. No. 54 at 9). In Galenski's opposition to Nutrien's motion, it represents that it has produced all documents in its possession, custody, or control that are responsive to Defendant's request 19, and that documents to which the deponent referred are not for the fields on which damaged crops were grown and, therefore, the documents to which the deponent referred are not responsive to Defendant's document request 19 (Dkt. No. 64 at 2-3).

The most reasonable interpretation of the descriptor "fields relevant to this lawsuit" is that Nutrien asked for documents related only to the fields where Galenski grew the crops allegedly damaged in July 2018 by application of Nutrien's agricultural chemicals. The deposition transcript attached to Nutrien's motion does not resolve the question of whether the lease agreements to which the deponent referred in his testimony related to a lease or leases of "fields relevant to this lawsuit" (Dkt. No. 55-10 at 3). Nutrien is entitled to production of documents that are responsive to its document request number 19. Plaintiff does not contend otherwise. Lease documents pertaining to fields where Galenski did not grow the crops it alleges

were damaged by Nutrien are, however, beyond the scope of Nutrien's request and Galenski has

no obligation to produce them.  *See Mongue v. Wheatleigh Corp.*, Civil No. 3:18-cv-30095-

KAR, 2021 WL 9217748, at *2 (D. Mass. Nov. 29, 2021) (defendants were not required to

produce a document that was not within the scope of plaintiff's first set of document requests to

the defendants).  Accordingly, the court orders as follows.  If Galenski has leases that are

responsive to Nutrien's document request 19 that it has not produced, then Galenski is ordered to

produce those documents within fourteen days of the date of this order.  If no such documents

exist, as is represented by Galenski, then Galenski will reaffirm that representation to Nutrien

within fourteen days of the date of the court's order.

      2.   Nutrien's document production request 17

Nutrien's document production request 17 sought production of all documents "related to

any loans applied for or obtained by [Galenski] or by any [person] for [your] benefit since 2015"

(Dkt. No. 54 at 23).  As to specifics, Nutrien complains that a Galenski family member testified

that, in 2018, Galenski had a line of credit with a credit union in Connecticut and that Galenski

did not produce documents related to this line of credit (Dkt. No 54 at 24).  For its part, Galenski

explains that it provided Nutrien with documents relevant to its finances by producing all of the

documents it has provided to its tax preparer for multiple years and never accessed the line of

credit in question (Dkt. No. 64 at 7-8).  Accordingly, Galenski objected to this request on

relevance grounds and on the basis that production of these documents would be unduly

burdensome.

By whatever method damages are to be calculated in this case, Galenski has put its

income and expenses in issue by alleging a loss caused by damage to crops.  While Galenski has

made what appears to be a reasonable effort to produce information about its financial condition,

information provided to a tax preparer might differ from the information provided to a potential

lending source.  Indeed, Nutrien points out that an application for a line of credit is likely to

include representations about Galenski's acreage, the annual value of its crops, and its expenses.

This is not information that would necessarily appear, or that would appear in the same or a

similar form, in tax returns and related documents.  In *Vázquez-Fernández v. Cambridge Coll.,

Inc.*, 269 F.R.D. 150, 163-65 (D.P.R. 2010), the plaintiffs resisted production of their bank and

credit card statements on grounds very similar to the argument Galenski makes here:  they

argued that because they had produced income tax returns and W-2 tax forms and a financial

statement, "the defendants [had] sufficient evidence to assess plaintiffs' income and financial

losses." *Id.* at 164.  The court rejected the argument, ruling that this contention was "not

sufficient to satisfy [the plaintiffs'] burden that the request [was] irrelevant." *Id.* at 165.  That

observation applies in the instant case.  Furthermore, Galenski has made no showing that

locating and producing such a limited set of documents would be unduly burdensome.  *See

Autoridad de Carretas y Transportacion*, 319 F.R.D. at 427.  Accordingly, Galenski will produce

all documents in its possession, custody, or control related to Galaneski's operational line of

credit with First Pioneer Bank, including but not limited to all documents submitted by Galenski

to obtain the line of credit, within fourteen days of the date on which this order is issued.

   3. Nutrien's document production request 18

   Nutrien's document request 18 requested the production of any documents "related to or

evincing any insurance policy through which you may be entitled to coverage for losses or

expenses that have been or may be incurred related to those claims asserted in the

[complaint]…." (Dkt. No. 54 at 25).  In response, Galenski represented that it had no insurance

policies which might provide coverage for its damages or liabilities in the instant case (Dkt. No.

64 at 8).  In its initial disclosures, Galenski also did not provide Nutrien with any insurance agreement "under which an insurance business [might] be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv).  Following a deposition of a Galenski family member, Galenski's counsel represented to defense counsel that Galenski carries standard liability insurance that does not provide coverage for crop loss and, for this reason, had no relevant documents to produce. Nutrien argues that Galenski must produce copies of its insurance policies because "[t]his case not only includes the Galenskis' claims of crop loss, but also a counterclaim for breach of contract …."  Plaintiff's insurance agreements, Nutrien argues, may provide coverage for damages Galenski owes to Nutrien, entitling Nutrien to review whatever insurance agreements Galenski possesses (Dkt. No. 54 at 25-26).

Galenski has represented to Nutrien and the court that it possesses no documents responsive to Nutrien's document request 18 because it is not a party to any insurance agreement under which an insurance business may be liable for the damages Galenski claims were caused by Nutrien, or for the damages Nutrien claims it incurred as a result of Galenski's failure to pay for Nutrien products.  Nutrien has not provided the court with any reason to believe that Galenski's representation is false.  To the extent Nutrien nonetheless seeks discovery related to any insurance agreements to which Galenski is a party, "courts have tended to consistently deny requests for pre-judgment discovery regarding a defendant's … ability to satisfy a judgment, either on the ground that Rule 26(a)(1)(A)(iv) does not require it, or because such discovery is just not relevant within the meaning of Rule 26 where it does not bear on a claim or defense asserted in the complaint."  *Gonzalez v. HOSOPO Corp.*, No. 18-cv-10072-FDS, 2020 WL 6134672, at *1 (D. Mass. July 24, 2020) (declining to order production of an insurance

agreement) (*citing, inter alia, In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, MDL No. 13-2419-FDS, 2014 WL 12814933, at *3 (D. Mass. Feb. 7, 2014)).  For the foregoing reasons, the court denies so much of Nutrien's motion to compel as seeks to compel Galenski to produce copies of documents relating to any insurance agreements to which Galenski may be a party.[1]

    B. <u>Nutrien's interrogatories 2, 7, and 19</u>

       Nutrien's interrogatory number 2 asked Galenski to identify all crops Galenski grew from 2013 to the present, identifying the crops grown and all inputs applied as to each acre under cultivation.  Nutrien's interrogatory number 7 asked Galenski to identify the nature and location of each damage or loss it alleged; what Galenski had done to mitigate its damages; and "[t]he amount of each item of loss or damage and a complete statement of how each amount was calculated" (Dkt. No. 54 at 14).  Nutrien's interrogatory number 19 asked Galenski to identify crops grown in prior years in the fields subject to the allegedly defective applications; list the quantity of crops from the affected fields that were sold and the price obtained for those crops; to state whether Galenski was claiming a complete loss for either affected field; to list the market price Galenski would have received for undamaged crops; to list all the costs Galenski incurred associated with the affected fields from 2016 through 2020; and for each year from 2016 to 2020, to provide a computation of profits from crops grown on the fields affected by the allegedly defective herbicide applications (Dkt. No. 54 at 18).

       While Galenski objected to the breadth of Nutrien's interrogatory number 2, in its answer and supplemental answer it described its farming operations, the crops it grew, and the fertilizers,

---

[1] Nutrien's motion papers also seek the production of logbooks containing information about Galenski's crop cultivation (Dkt. No. 54 at 10-12).  Nutrien withdrew this aspect of its motion to compel at the hearing because Galenski had produced the documents.

herbicides, pesticides, and fungicides it used on the various crops it grew (Dkt. No. 54 at 13).  It is not clear from Nutrien's briefing that Nutrien has identified any deficiencies in this answer.  In any event, the court holds that Galenski has provided a sufficient answer to Nutrien's interrogatory number 2.

Nutrien's interrogatory number 7 – and Fed. R. Civ. P. 26(a)(1)(A)(iii) – required Galenski to compute its alleged damages, meaning to provide a numerical value reflecting its claimed losses attributable to the applications of the allegedly defective crop inputs, and to identify the documents on which its calculations were based.  *See W.N. Motors, Inc. v. Nissan N. Am., Inc.*, Civil Action No. 21-cv-11266-ADB, 2022 WL 1568443, at *4 (D. Mass. May 18, 2022) ("courts generally hold that '[t]he language of the Rule calls for more than a listing of the category of damages – it requires the Plaintiff to place a numerical value on each category of damages.'") (alteration in original) (quoting *Ayanna v. Dechert, LLP*, CIVIL ACTION NO. 10-CV-12115-NMG, 2011 U.S. Dist. LEXIS, 121470, at *2 (D. Mass. Oct. 20, 2011); citing additional cases).  "Rule 26 'does not set a particularly high bar for compliance ….'"  *Id.* (quoting *Lennar Ne. Props., Inc. v. Barton Partners Architects Planners Inc.*, Civil Action No. 16-cv-12330, 2021 WL 927520, at *3 (D. Mass. Mar. 11, 2021)).  Nutrien's interrogatory further required Galenski to explain the method by which it calculated its claimed losses.  Galenski answered this interrogatory, then served a supplemental and a second supplemental answer (Dkt. No. 54 at 14-18).

As far the court can determine, Galenski has satisfied its obligation to compute its alleged damages and explain the methodology by which it did so.  In making this determination, the court relies on Galenski's opposition to Nutrien's motion to compel, which appears to indicate that Galenski has computed the numerical value of its alleged losses, explained the method by

which it computed those losses and identified and produced the documents on which the calculations were based (Dkt. No. 64 at 4-6). That Nutrien may disagree with or dispute the method by which Galenski calculated its alleged losses is not a basis for an order from the court requiring Galenski to perform the calculations in a manner that conforms to Nutrien's view of the law. Certainly, Nutrien has not cited any authority that supports this contention. Unless Galenski has failed to compute the numerical value of each of the losses and damages it claims, or failed to explain, in an interrogatory answer, how it computed these losses and damages, or has failed to make relevant documents available for inspection, this part of Nutrien's motion to compel is denied. If Galenski has not satisfied each of these obligations, then it must supplement its interrogatory answer so that it meets these obligations within 14 days of the date of this order.

The court further declines to compel a supplemental answer from Galenski to Nutrien's interrogatory 19. Nutrien's interrogatory 19 seeks information related to crops grown in the fields subject to the allegedly defective July 2018 crop input applications. The final subpart of Nutrien's interrogatory 19 asks Galenski to provide a computation of its profits "derived from the sale of crops from fields subject to the July 2, 2018 and July 25, 2018 applications" from 2016 through 2020 (Dkt. No. 54 at 18). Galenski has responded that it does not have the information Nutrien seeks in interrogatory number 19 in its possession, custody, or control because it does not grow the same crops in the same fields each year, nor does it maintain data on crop inputs and other expenses by field, and it maintains sales data by crop, not by the field in which the crop was grown. Nutrien contends that, in view of Galenski's response that it cannot break out sales and expenses data related to a subset of the fields it farms, Galenski should be required to produce information for all crops grown and all expenses incurred for 2018 and for comparator years (Dkt. No. 54 at 22).

For the following reasons, the court declines to require Galenski to supplement its answer to Nutrien's interrogatory number 19.  First, Nutrien asked for production and expense data for the approximately 92 acres Plaintiff claims were damaged by allegedly contaminated agricultural chemicals from Nutrien.  Galenski's obligation is to answer the interrogatories served upon it or explain why it cannot do so.  Galenski satisfied this obligation (Dkt. No. 64 at 5-7).  Nutrien had the option of serving supplemental interrogatories requesting data for Galenski's entire operation, or, if the deadline for completion of non-expert discovery had passed, moving for leave to do so on the grounds that the data it had received did not permit it to analyze and challenge Galenski's damages calculations.  Instead, Nutrien filed a motion to compel an answer to an interrogatory it did not serve.  *See Shea v. Millett*, Civil Action No. 17-cv-12233-ADB, 2019 WL 4218477, at *2 (D. Mass. Sept. 4, 2019) ("The Court denies Defendant's motion to compel to the extent it seeks a response to Interrogatory No. 13 that includes the method of Plaintiff's calculation of damages, which is outside of the scope of the request.").  At this late date, the court will not authorize the service of supplemental interrogatories.  Second, Galenski represents that it has provided the documents it provided to its tax preparer pertaining to its farm operations for multiple years (Dkt. No. 64 at 7-8).  Thus, it appears that Galenski has provided documents that would show its sales, expenses, and profits for multiple years.

Finally, Nutrien is not entitled to an order compelling Galenski to calculate its damages to Nutrien's specifications.  Plaintiff bears the burden of proof on the issue of damages.  *See, e.g., Viscito v. Nat'l Planning Corp.*, Civil Case No. 3:18-30132-MGM, 2019 WL 5318228, at *7 (D. Mass. Oct. 21, 2019).  Galenski has calculated its alleged losses and damages with a substantial degree of specificity, explained its method of calculating damages, explained why, in the circumstances, it is entitled to rely on its sales in comparator years of the type of crop that

was damaged in 2018 to establish value, and addressed the issue of avoided costs.  *See Clark v*

*Berkshire Med. Ctr., Inc.*, Civil Action No. 17-30186-MGM, 2019 WL 78994, at *3 (D. Mass.

Jan. 2, 2019) (a plaintiff is obligated to compute her alleged losses with a substantial degree of

specificity); *Murphy v. Town of Chatham*, 676 N.E.2d 473, 477 (Mass. App. Ct. 1996)

(describing and accepting the standard the parties agreed on for purposes of calculating an

agricultural loss under Massachusetts law), *overruled on other grounds*, *Morrissey v. New*

*England Deaconess Assoc. – Abundant Life Cmties., Inc.*, 940 N.E.2d 391 (Mass. 2010).

Galenski has sufficiently answered Nutrien's interrogatory 19 as propounded.  If Nutrien claims

to be disadvantaged in its ability to challenge Plaintiff's damages calculation, that problem is, at

least to some extent, of its own making.

III.    Conclusion

For the reasons set forth above, Nutrien's Motion to Compel Discovery is GRANTED in

part and DENIED in part as set forth herein.  No costs or fees to either party.

It is so ordered.

Dated:  November 21, 2022                    Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             U.S. MAGISTRATE JUDGE